# Illinois Official Reports

## Appellate Court

---

### *Zurek v. Petersen*, 2015 IL App (1st) 150508

---

| | |
|---|---|
| Appellate Court Caption | KEN ZUREK, Petitioner-Appellant, v. RANDALL K. PETERSEN, TOMMY THOMSON, in His Capacity as Village Clerk of the Village of Franklin Park, Illinois, and DAVID ORR, in His Capacity as County Clerk of Cook County, Illinois, Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0508 |
| Filed | May 22, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-COEL-029; the Hon. Margarita Kulys-Hoffman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ken Zurek, of Franklin Park, appellant *pro se*.<br><br>Joseph Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellee Randall K. Petersen.<br><br>Matthew M. Welch and P. Joseph Montana, both of Montana & Welch LLC, of Palos Heights, for appellee Tommy Thomson. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Gordon concurred in the judgment and opinion. |

**OPINION**

¶ 1        Petitioner Ken Zurek and Vicki Vanderhei and Chris Litwin filed nomination papers with the Village of Franklin Park, Cook County, Illinois, in order to appear as candidates for the office of village trustee on ballots printed for the consolidated election occurring on April 7, 2015. Respondent Randall K. Petersen filed an objector's petition contending that none of the voter petition sheets filed in support of the three candidates met the requirement in section 10-4 of the Election Code that each sheet include a sworn statement from the circulator of the petition specifying the date or dates on which the sheet was circulated. 10 ILCS 5/10-4 (West 2012). The candidates then tried to persuade the Franklin Park Municipal Officers Electoral Board (electoral board or board) that it was sufficient for each circulator to have sworn "that all of the signatures on this sheet were signed within the statutory time period for petition circulation." The electoral board rejected this argument and ruled unanimously that the nomination papers were invalid. The candidates sought review in the circuit court of Cook County, which affirmed the board, and then candidate Zurek sought further review by this court. Due to the short period of time between his appeal to this court and the scheduled election on April 7, 2015, we granted Zurek's motion to expedite the appeal, we accelerated the usual briefing schedule, and, after considering the parties' briefs and the record compiled for our review, we issued a short order on April 1, 2015, affirming the board's decision. This opinion provides our reasons for that affirmance.

¶ 2        Before addressing the arguments for reversal, we have considered the fact that Zurek, a *pro se* individual, seeks relief on behalf of himself and the two other candidates. We find that it is not appropriate for us to grant any relief to candidates Vanderhei and Litwin. The notice of appeal and amended notice of appeal associated with this case were submitted by "Petitioner-Appellant Ken Zurek, *pro se*" and were signed only by Zurek on his own behalf. A notice of appeal (or in this case, a notice and an amended notice) must contain the signature of each appellant or his or her attorney. Ill. S. Ct. R. 303(b)(4) (eff. May 30, 2008). Candidates Vanderhei and Litwin did not sign Zurek's notice or amended notice of appeal and they did not file a separate notice of appeal. Zurek is not a licensed attorney and no attorney signed Zurek's notice or amended notice on behalf of the two other candidates. Accordingly, this appeal was taken by Zurek only on Zurek's behalf only. The board's decision as to the candidacies of Vanderhei and Litwin is not before us and will not be affected by our decision. *Coleman v. Akpakpan*, 402 Ill. App. 3d 822, 824, 932 N.E.2d 184, 186 (2010) (when a notice of appeal named only the wife and contained only the wife's signature, then it was an appeal taken by only the wife and not by the wife and husband); *People v. Krueger*, 146 Ill. App. 3d 530, 533, 495 N.E.2d 993, 996 (1986) (when a notice of appeal named two appellants but was signed by only one of them, it was an appeal taken by only the one who signed); *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 3 n.1, 10 N.E.3d 339 (when a notice of appeal named one of four defendants and was signed by an attorney only on behalf of that one defendant, then it was an appeal as to only that one defendant).

¶ 3        We now turn to the substantive issues. Where an administrative board's decision has been reviewed by the circuit court, the appellate court reviews the decision of the electoral board, instead of the decision of the court. *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873, 869 N.E.2d 802, 804 (2007); *Cinkus v. Village of Stickney Municipal*

*Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1019 (2008). When the dispute is over the interpretation of a statute, as it is in this case, then the question is purely one of law and our standard of review is *de novo*. *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018.

¶ 4    Shortly after receiving notice of the objector's petition, candidates Zurek, Vanderhei, and Litwin filed with the electoral board a motion to strike and dismiss the objector's petition. Although the electoral board was not persuaded by any of the arguments for dismissal, Zurek repeats them on appeal. Accordingly, we will set out and address each argument in turn.

¶ 5    The candidates first argued to the electoral board that Tommy Thomson, Franklin Park's village clerk, filed the objector's petition without first receiving the original and two copies as required by section 10-8 of the Election Code. Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)). This was the full extent of the argument. The candidates did not specify what occurred when the petition was presented for filing. Section 10-8 states in relevant part, "Any legal voter of the political subdivision or district in which the candidate or public question is to be voted on, *** having objections to any certificate of nomination or nomination papers or petitions filed, shall file an objector's petition together with 2 copies thereof ***. Objection petitions that do not include 2 copies thereof, shall not be accepted." Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)). In their reply brief, the candidates attached an affidavit from Zurek which included the statement, "That based on my experience with the Village Clerk's office it has been their practice to issue a time stamped receipt to the person filing an objector petition indicating the number of copies of the objector's petition filed and to keep said copy for their records."

¶ 6    The electoral board convened public hearings on January 12, 2015, January 25, 2015, February 2, 2015, February 9, 2015, and February 12, 2015, regarding the objector's petition and the candidates' motion to dismiss. In its subsequent decision, the electoral board remarked that the candidates failed to provide and had not even asked to introduce written proof or testimony supporting their allegation that Village Clerk Thomson accepted less than two copies of the objector's petition at the time of filing. The electoral board pointed out that the candidates were not taking issue with the receipt issued by "Franklin Park Clerks Office" clearly showing the timely filing date and time. Continuing, the board noted that it is the duty of the village clerk to accept an objector's petition and that section 10-8 of the Election Code does not require that a municipal clerk or other local election official issue a receipt which specifies the number of additional copies that were tendered with the original petition for filing. Section 10-8 only requires that the "local election official shall note the day and hour upon which such objector's petition is filed." Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)). Thus, in this case, the objector was under no obligation to plead, prove, or produce a receipt identifying the number of copies that were filed.

¶ 7    Zurek now contends that the objector's compliance with section 10-8's mandatory language ("shall file") cannot be presumed and that because the record lacks any evidence of the objector's compliance, the objection was waived. *Puss N Boots, Inc. v. Mayor's License Comm'n*, 232 Ill. App. 3d 984, 986-87, 597 N.E.2d 650, 652-53 (1992) (stating that the use of "shall" generally indicates a legislative intent to make a provision or a law mandatory). Zurek relies on *Thomas*, in which the court held that an objector's "fail[ure] to object to the sufficiency of *** nomination papers in the manner prescribed by statute [results in waiver of the objection]." *Thomas v. Powell*, 289 Ill. App. 3d 143, 147, 681 N.E.2d 145, 147 (1997).

Zurek contends this means that when the objector to Zurek's candidacy did not affirmatively show the objector's compliance with section 10-8, then the objection should have been dismissed. Zurek cites other authority, but *Thomas* is the only case he cites for the proposition that it was the objector's burden at the hearing to produce evidence of compliance and that the board incorrectly placed the burden of proof on the candidates to prove their contention that the objector submitted less than two copies of his petition to the village clerk.

¶ 8    We do not find Zurek's argument persuasive. According to section 10-8, an objection petition cannot be filed unless a sufficient number of copies accompany the original petition. Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)) ("Objection petitions that do not include 2 copies thereof, shall not be accepted."). Therefore, the only reasonable inference created by the filing of this petition is that the objector tendered a sufficient number of copies at the time.

¶ 9    This reasonable inference is bolstered by the fact that after accepting and filing the documents, the election official is required to take certain actions. The election official is required by section 10-8 to send the original objection petition to the electoral board and one of the copies to the candidate. Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)). Thus, pursuant to statute, the original and one copy are distributed straight away. Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012) ("not later than 12:00 noon on the second business day after receipt of the petition, [the election official shall] transmit *** the original objector's petition to the chairman of the proper electoral board *** and shall transmit a copy *** to the candidate whose certificate of nomination or nomination papers are objected to")). The election official is required by section 10-15 to subsequently certify either the names of candidates entitled to appear on the election ballot or to certify that an objection is or objections are pending. 10 ILCS 5/10-15 (West 2012) ("each local election official *** shall *** direct the election authority to place upon the official ballot for such election the names of such candidates"; however, "candidates whose petitions have been held invalid by the appropriate electoral board *** shall not be so certified"). Thus, the election official does more than simply file stamp and distribute objection papers. The third set of documents filed by the objector is presumably for the election official's own record keeping and files, so that the official can keep track of the status of any objection proceedings and certify the appropriate information for the ballot. 10 ILCS 5/10-15(7) (West 2012) ("Where a candidate's nominating papers or petitions have been objected to and the decision of the electoral board *** is either unknown or known to be in judicial review, the words 'OBJECTION PENDING' shall be placed under the title of the office being sought by the candidate and next to the name of the candidate.").

¶ 10    The reasonable inference that three sets were tendered and accepted in this instance was not overcome by any authority cited by Zurek. He fails to cite any statute or case law that requires the municipal election official to issue or the objector to obtain a receipt which specifies the number of copies that were accepted by the official for filing. Instead, Zurek's self-serving affidavit vaguely refers to his "experience" on an unspecified date in an unspecified type of proceeding with some sort of objection petition. Zurek's affidavit was not legal authority and it added nothing to these proceedings.

¶ 11    Another defect in Zurek's argument is that he failed to set out any facts in his motion to dismiss or his affidavit which would overcome the reasonable inference here of statutory

compliance and, therefore, shift the burden of proof of statutory compliance to the objector. Zurek did not, for instance, present the sworn statement of someone who observed the filing. Zurek did not specify the number of copies that were presented for filing. Zurek did not identify the specific village employee who accepted the documents and instead assumed Village Clerk Thomson himself accepted the papers. Factual statements regarding the presentation, acceptance, and filing of the objector's petition are what could overcome or at least call into doubt the reasonable inference that was created by the acceptance and filing of this petition.

¶ 12 Zurek's reliance on *Thomas* is misplaced. *Thomas*, 289 Ill. App. 3d 143, 681 N.E.2d 145. That case indicates that facts established by the record shall not be overcome by mere assertions of a party or an assumption by the court–which is a principle that is not helpful to Zurek's appeal. In *Thomas*, the date that was file stamped by the county clerk's office on an objector's petition showed that the objection was late. *Thomas*, 289 Ill. App. 3d at 146-47, 681 N.E.2d at 147. The objector contended that his petition was not late and had been timely filed in a different office which did not make note of the filing before the petition was transmitted to the county clerk's office, where it was file stamped after the deadline. *Thomas*, 289 Ill. App. 3d at 147, 681 N.E.2d at 147. However, the court determined that it had to limit its analysis to the evidence of record rather than rely on a contrary argument. *Thomas*, 289 Ill. App. 3d at 147, 681 N.E.2d at 147. That holding does not suggest that Zurek's bare assertion that the objector filed less than two copies, unsupported by any facts regarding the filing of the objector's petition, warranted the dismissal of that petition.

¶ 13 Since Zurek has failed to provide any authority or facts in his favor, we reject his primary argument for reversal of the electoral board's decision.

¶ 14 The candidates also argued to the board that the objector's petition was defective and should be dismissed because it did not name as a party the new political party, "Progress Through Lower Taxes Party." The nomination petition sheets at issue here included the following title and introduction:

"**PETITION FOR NOMINATION**

**VILLAGE TRUSTEES–NEW POLITICAL PARTY**

We, the undersigned, being duly qualified electors and registered voters in the Village of Franklin Park in the County of Cook and the State of Illinois do declare that it is our intention to form a new political party in the political division aforesaid, to be known and designated as the **PROGRESS THROUGH LOWER TAXES PARTY**, and do hereby petition that the following named persons shall be candidates for the offices hereinafter specified, to be voted upon at the Consolidated Election to be held on April 7, 2015.

A COMPLETE SLATE IS HEREBY PRESENTED

[Chris Litwin, village trustee, four-year term, *** Sunset Lane, Franklin Park; Vicki Vanderhei, village trustee, four-year term, *** Herrick Avenue, Franklin Park; Ken Zurek, village trustee, four-year term, *** George Street, Franklin Park]."

¶ 15 The candidates argued to the electoral board that the political party was a necessary and indispensible party to the objection proceedings and that its omission from the petition warranted its dismissal. The electoral board did not find this argument persuasive and neither do we.

¶ 16    We reject this argument because the political party does not exist and has never existed as a legal entity such that it could be made a party to an action either as a respondent or petitioner or assert any rights in this election proceeding. New political parties are created by a nomination petition as set out in section 10-2 of the Election Code. 10 ILCS 5/10-2 (West 2012); *People ex rel. Voters for Progress Party v. Wilk*, 118 Ill. App. 2d 386, 390, 254 N.E.2d 834, 836 (1969) ("A group of persons who desire to form a new political party and to have their candidates placed upon the ballot proceed by petition under section 10-2 of the Election Code ***."). Section 10-8 of the Election Code states that "nomination papers, *** being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid *unless objection thereto is duly made* in writing within 5 business days after the last day for filing the *** nomination papers." (Emphasis added.) Pub. Act 98-691 (eff. July 1, 2014) (amending 10 ILCS 5/10-8 (West 2012)). Timely objection was made in this instance; thus, the validity of the nomination petitions was put into question and the electoral board subsequently sustained the objection in its entirety. Therefore, the nomination petitions were not valid and they did not create a new political party. *People ex rel. Vigilant Party v. Village of Dolton*, 118 Ill. App. 2d 392, 396, 254 N.E.2d 832, 834 (1969) (where nominating petitions for full slate of candidates under the name of a new political party were stricken, this political party did not exist). Zurek cites two cases in which new political parties were named as parties, *Green Party v. Henrichs*, 355 Ill. App. 3d 445, 822 N.E.2d 910 (2005), and *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill. App. 3d 1004, 945 N.E.2d 1175 (2011). However, neither opinion addresses the appropriateness of naming a political party and neither court held that a political party is an indispensible party in an election proceeding.

¶ 17    Our next consideration is whether the wording of the petition circulators' affidavits complied with the Election Code. The objector's petition to the nomination papers centered on allegations that the petition circulators' affidavits were entirely ineffective because it was impossible to determine from the face of the petition sheets when each individual sheet was circulated. The objector contended the statement that was provided could not be properly tested or relied upon to uphold the integrity of the electoral process.

¶ 18    The parties' arguments require us to apply section 10-4 of the Election Code. 10 ILCS 5/10-4 (West 2012). When applying a statute, a court's primary objective is to ascertain and give effect to the intent of the legislature. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441, 837 N.E.2d 16, 21 (2005). The best indication of legislative intent is the language used in the statute, which must be given its plain and ordinary meaning. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31, 4 N.E.3d 37. Statutory language that is clear and unambiguous will be applied as it was written, without resort to other principles of statutory construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 534, 689 N.E.2d 1047, 1054 (1997). A court will not depart from plain statutory language by reading in exceptions, limitations, or conditions that were not expressed by the legislature. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18, 990 N.E.2d 1144. Words and phrases will not be considered in isolation, but will be viewed in context with other relevant provisions of the statute. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320, 789 N.E.2d 1248, 1252 (2003). Furthermore, each word, clause and sentence of a statute will be given a reasonable construction, if possible, and will not be rendered superfluous. *Prazen v. Shoop*, 2013 IL 115035, ¶ 21, 998 N.E.2d 1.

¶ 19     Section 10-4 of the Election Code states in relevant part:

"No signature shall be valid or be counted in considering the validity or sufficiency of such petition [for nomination] unless the requirements of this Section are complied with. At the bottom of each sheet of such petition shall be added a circulator's statement, *** certifying that the signatures on that sheet of the petition were signed in his or her presence; certifying that the signatures are genuine; and either (1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition; and certifying that to the best of his knowledge and belief the persons so signing were at the time of signing the petition duly registered voters *** and certifying that their respective residences are correctly stated therein. Such statement shall be sworn to before some officer authorized to administer oaths in this State. No petition sheet shall be circulated more than 90 days preceding the last day provided in Section 10-6 for the filing of such petition." 10 ILCS 5/10-4 (West 2012).

¶ 20     Thus, in short, section 10-4 of the Election Code requires each circulator to provide a factual statement under oath attesting to the timing of the circulation of each petition. 10 ILCS 5/10-4 (West 2012). However, instead of setting out one of the three factual statements mandated by section 10-4, the nomination papers at issue include the legal conclusion "that all of the signatures on this sheet were signed within the statutory time period for petition circulation." The only date that appears on each of the 45 petition sheets that was submitted is the date on which the sheet was notarized.

¶ 21     We do not consider the circulators' statement "that all of the signatures on this sheet were signed within the statutory time period for petition circulation" to be what was required by the plainly worded statute. Stating a legal conclusion instead of certain facts does not accomplish the purpose of including an affidavit. The obvious purpose of all election laws is to ensure honest and fair elections. *Pullen v. Mulligan*, 138 Ill. 2d 21, 66, 561 N.E.2d 585, 605 (1990). The purpose of requiring the circulator's sworn statement is to subject that person to a possible perjury prosecution. *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 826, 634 N.E.2d 444, 447 (1994). Thus, the requirement of a circulator's affidavit is considered "a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process." *Sakonyi*, 261 Ill. App. 3d at 826, 634 N.E.2d at 447; *Shipley v. Stephenson County Electoral Board*, 130 Ill. App. 3d 900, 906-07, 474 N.E.2d 905, 910 (1985). However, if the circulator's statement is a legal conclusion rather than a factual statement identifying a specific date, a range of two specific dates, or a window of no more than 90 days before the filing of the petition, then it would be impossible to effectively question the circulator about when he or she obtained the voters' signatures. The purpose of the affidavit is defeated by the conclusory statement.

¶ 22     Zurek contends that all that was intended by section 10-4 was only the possibility of prosecution for perjury, not a conviction for perjury. This is effectively a concession that the conclusory statement shields the circulator from questioning. Since the questioning cannot lead to a conviction, it is unlikely that criminal charges would even be filed. Zurek's interpretation undermines the purpose of the statute.

¶ 23     Zurek points to his more recent affidavit, written on January 10, 2015, and filed in response to the objector's petition, in which Zurek swore that he personally printed all the

circulator's petition sheets, and that 42 of them were printed on November 28, 2014, while the other 3 were printed on December 8, 2014. Even this after prepared affidavit fails to track the statutory language regarding the specific date or range of dates. Furthermore, there is no provision in the statute for one campaign organizer to file a single, blanket affidavit in lieu of the plainly worded requirement that certain factual statements appear at the bottom of each petition sheet and be attested to by the individual who circulated that sheet.

¶ 24    Zurek proposes that compliance with section 10-4 can be less than exact, that substantial and not strict compliance will suffice, and that the content of the affidavit at issue met that lesser standard. He provides little reasoning to support this position, other than to protest that excluding his name from the ballot has "undoubtedly result[ed] in absurdity, inconvenience, and injustice and allow[ed] the objector to hijack the consolidated election for Franklin Park Village Trustee and disenfranchise the candidates' voters."

¶ 25    Statutes are deemed mandatory if the intent of the legislature directs a certain consequence from noncompliance with the statute. *Pullen*, 138 Ill. 2d 21, 561 N.E.2d 585. In this instance, the legislature dictated a certain consequence for noncompliance with section 10-4: "No signature shall be valid or be counted in considering the validity or sufficiency of such petition [for nomination] unless the requirements of this Section are complied with." 10 ILCS 5/10-4 (West 2012). We find this to be a clear statement from the legislature that literal, strict compliance is required.

¶ 26    Zurek next argues that section 10-4 is unconstitutionally vague. 10 ILCS 5/10-4 (West 2012). Zurek did not present this argument to the electoral board and it is not appropriate for him to raise new arguments during review of the board's decision. *Cook County Board of Review v. Property Tax Appeal Board*, 395 Ill. App. 3d 776, 786, 918 N.E.2d 1174, 1182 (2009) (arguments or objections that are not made during the course of the administrative hearing process but instead are raised for the first time on review are deemed waived). We find the new argument has been waived.

¶ 27    We conclude that because the wording of the circulators' affidavits was defective, section 10-4 of the Election Code mandated that all of the voters' signatures and all of the petition sheets be deemed invalid. The objection to the petition sheets was correct and the board acted properly when it sustained the objection in its entirety and held that Zurek's name would not appear on the ballot.

¶ 28    Zurek's final argument is that if we conclude his name was erroneously left off the ballot, we should void the results of the election that occurred on April 7, 2015, and order that a special election take place which includes Zurek as a candidate for village trustee. We have rejected all of Zurek's arguments for reversal and we do not find the April ballot to have been in error without the inclusion of Zurek's name. No special election is warranted.

¶ 29    Given that none of Zurek's arguments have been convincing, we affirm the decisions of the board and the circuit court.

¶ 30    Affirmed.